# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CUMBERLAND MUTUAL FIRE INSURANCE COMPANY and CUMBERLAND INSURANCE COMPANY, INC., : : : | CIVIL ACTION NO. 3:12-2404 |
| : | (JUDGE MANNION[1]) |
| **Plaintiffs** : | |
| v. : | |
| : | |
| MICHAEL GRATZ INSURERS and MICHAEL GRATZ, : | |
| **Defendants** : | |

## **M E M O R A N D U M**

Pending before the court is the defendants' motion to dismiss the plaintiffs' amended complaint for failure to state a claim upon which relief can be granted. (Doc. No. 10). Based upon the court's review of the motion and related materials, the defendant's motion to dismiss will be granted and the plaintiffs' complaint will be dismissed.

## I. PROCEDURAL HISTORY

By way of relevant background, on November 30, 2012, the plaintiffs filed the instant action. (Doc. No. 1). By memorandum and order dated December 7, 2012, the court directed the plaintiffs to file an amended

---

[1]The instant action was originally assigned to the Honorable A. Richard Caputo. By verbal order, on January 4, 2013, the matter was reassigned.

complaint properly alleging diversity jurisdiction. (Doc. No. 6, Doc. No. 7). The plaintiffs filed their amended complaint on December 12, 2012. (Doc. No. 8).

On December 17, 2012, the defendants filed the instant motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted, (Doc. No. 10), along with a brief in support thereof, (Doc. No. 11). On December 31, 2012, the plaintiffs filed a brief in opposition to the defendants' motion. (Doc. No. 12). The defendants filed a reply brief on January 4, 2013. (Doc. No. 13).

## II. LEGAL STANDARD

In deciding the defendants' motion to dismiss, the court must read the complaint in the light most favorable to the plaintiffs and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiffs if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 554 (rejecting the

traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra, and providing further guidance on the standard set forth therein).

In deciding the defendants' motion, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiffs have identified as the basis of their claim. See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

The following allegations are taken directly from the plaintiffs' amended complaint and are accepted as true for purposes of considering the instant motion to dismiss. At all relevant times, defendant Michael Gratz Insurers was designated as authorized agent for the purposes of selling various lines of insurance underwritten by the plaintiffs, Cumberland Mutual Fire Insurance Company and Cumberland Insurance Company, Inc., (hereinafter

"Cumberland"), pursuant to a written agency agreement, (hereinafter the "Agency Agreement")(Doc. No. 8, Exh. A).

Pursuant to 75 Pa.C.S.A. §1738, for a policy to be issued with non-stacking limits, an insurance carrier must receive from the first named insured a signed and dated waiver of the stacking of limits on a form proscribed by the statute.

Pursuant to the Agency Agreement, defendant Michael Gratz Insurers caused to be issued a Cumberland commercial automobile policy of insurance, policy number CA 7500178, to Ronald Oleski t/a Oleski Electric, with effective dates of coverage from April 20, 2010, through April 20, 2011.

Defendant Michael Gratz Insurers submitted to Cumberland a §1738 waiver of stacked limits for uninsured and underinsured motorist coverage that was purportedly signed by the first named insured, Ronald Oleski, and dated April 7, 2006.

Cumberland issued a policy to Oleski as a non-stacking policy and charged a reduced premium to reflect that it was a non-stacking policy.

On or about November 22, 2010, Ronald Oleski was involved in an accident wherein he sustained significant injuries. As a result, by correspondence dated December 2, 2010, Mr. Oleski, through counsel, submitted a claim for uninsured and underinsured motorist coverage. Mr. Oleski filed an application for benefits against the policy which sought the policy limits of the underinsured motorist benefits on or about December 13,

2010.

Initially, Cumberland took the position that the full amount of underinsured coverage available for the loss was $100,000 on a non-stacking basis. Thereafter, Mr. Oleski's counsel contested the validity of the §1738 waiver, contending that it was not signed by Mr. Oleski. An investigation was undertaken by Cumberland, wherein Michael Gratz admitted to Cumberland that the signatures on the §1738 waivers Cumberland had in its underwriting file were not that of Mr. Oleski, but had been signed by himself or someone else in order to obtain a quote. Defendant Michael Gratz indicated to Cumberland that Mr. Oleski had executed a second set of §1738 waivers, and provided a copy of a different set of §1738 waivers from his file to Cumberland.

Counsel for Mr. Oleski submitted the §1738 waivers along with exemplars of Mr. Oleski's signature to a forensic document examiner, John S. Gencavage, who opined that Mr. Oleski did not write the questioned signatures contained on the §1738 waivers. Upon receipt of Mr. Gencavage's report, Cumberland retained the services of handwriting experts, Khody Detwiler and Gus Lesnevich, who examined the same documents Mr. Gencavage reviewed, along with additional exemplars provided by defendant Michael Gratz of the signatures of Mr. Oleski, Mr. Gratz, and Mrs. Oleski. Mr. Detwiler and Mr. Lesnevich both opined that the signatures contained on the §1738 waivers from defendant Michael Gratz Insurer's file were definitely not

5

that of Mr. Oleski.

In the absence of a signed waiver pursuant to §1738, Cumberland could no longer maintain that Mr. Oleski's policy was non-stacking. As such, Cumberland tendered the stacked policy limits of $300,000, instead of the non-stacked limits of $100,000, in full satisfaction of Mr. Oleski's underinsured motorist benefits claim.

Based upon the above, the plaintiffs have filed the instant action which sets forth five claims against the defendants: Count I - Negligence (against Michael Gratz Insurers and Michael Gratz); Count II - Gross Negligence (against Michael Gratz Insurers and Michael Gratz); Count III - Negligent Misrepresentation (against Michael Gratz Insurers and Michael Gratz); Count IV - Intentional Misrepresentation (against Michael Gratz Insurers and Michael Gratz); and Count V - Violation of the Pennsylvania Insurance Fraud Prevention Act, 18 Pa.C.S.A. §4117 (against Michael Gratz only).

In their motion to dismiss, the defendants argue that all counts of the amended complaint should be dismissed because defendant Gratz Insurers is an agent of the plaintiffs and their relationship is defined by the terms of a contract, i.e. the Agency Agreement. The defendants argue that the "gist of the action" doctrine bars tort claims where liability arises solely from the contractual relationship between the parties. (Doc. No. 11, pp. 6-9).

The gist of the action doctrine seeks to maintain a distinction between the boundaries of tort and contract law by requiring courts to look beyond the

face of the pleadings and determine whether an alleged tort claim actually sounds in contract. Sarsfield v. Citimortgage, 707 F.Supp.2d 546, 553 (M.D.Pa. 2010) (quoting eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa .Super.Ct. 2002)); Pennsylvania Mfrs. Ass'n Ins. Co. v. L.B. Smith, Inc., 831 A.2d 1178, 1182 (Pa.Super.Ct. 2003) (explaining that courts must examine the claim to determine its true gist). Tort claims "lie for breaches of duties imposed by law as a matter of public policy, whereas contract actions lie only for breaches of duties imposed by consensual agreements between particular individuals." Id. To determine when a contract claim is really masquerading as a tort, the court must determine whether the "parties' obligations are defined by the terms of the contract [or] by the larger social policies embodied by the law of torts." Id. (quoting Hart v. Arnold, 844 A.2d 316, 339–40 (Pa.Super.Ct. 2005)). If the contract is merely "collateral" to a claim, the gist of the action doctrine does not bar the tort claim. Hart v. Arnold, 884 A.2d at 339 ("a breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral."). Pennsylvania courts have enumerated four scenarios where the gist of the action doctrine precludes recover in tort:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

7

Sarsfield v. Citimortgage, Inc., 707 F.Supp.2d at 553 (citing eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d at 19).

Here, the plaintiffs' allegations establish that the parties had entered into an Agency Agreement. That Agency Agreement governs the defendants' duties and obligations to the plaintiffs with respect to the sale of insurance policies. It is clear from the claims made in the plaintiffs' amended complaint that the claims set forth by the plaintiffs are inextricably entwined with the Agency Agreement entered into between the parties. As such, the plaintiffs are limited to a contract claim, not the larger social policies found in tort law, and the plaintiffs' claims for negligence, gross negligence, negligent misrepresentation and intentional misrepresentation are barred by the gist of the action doctrine. Similarly, although the plaintiffs' claim that defendant Michael Gratz' violation of the Pennsylvania Insurance Fraud Prevention Act is a statutory claim, it would not exist if the parties were not bound by the Agency Agreement at issue. Therefore, this claim is barred as well.

The plaintiffs argue that their claims are not barred by the gist of the action doctrine because they arise from a breach of duties imposed as a matter of social policy, i.e., fiduciary duties extending beyond the contractual duties set forth in the Agency Agreement. The court finds this argument unavailing. To this extent, the defendants would owe the plaintiffs no fiduciary duty if it were not for the provisions of the Agency Agreement. There is no indication that the fiduciary duties owed as alleged in the amended complaint

were not controlled by, or outside of the scope of, the Agency Agreement.

For example, the Agency Agreement provides for the authority of the Agent to

> Bind and execute insurance contracts as provided in the manuals, rules, regulations, rulings and specific instructions of the Company....The Agent further agrees to abide by and be bound by the manuals, rules, regulations and specific instructions of the Company. The Agent shall in no way obligate the Company except within the authority vested in the agent by the written or printed instructions of the Company...

(Doc. No. 8, Exh. A).

The Agency Agreement further specifies that the Agent has responsibilities, *inter alia*,

> That the Agent shall keep full and accurate records of the business transacted by him under this agreement and shall forward to the Company such reports of said business and permit the Company to examine said records at any time and place, and to make copies of said records as it may deem necessary.

(Id.).

Further, the agreement speaks to the provisions that would govern a termination or suspension of the Agent, and indemnification for misdeeds,

> Termination will become immediate effective without any notification whatsoever in the event ... That the Agent is guilty of gross and wilful misconduct or fraud...
>
> The Agent shall indemnify and hold the Company harmless against all civil liability including reasonable attorney's fees and costs of investigation and defense incident thereto and reasonably incurred, arising as a result of any and all loss, damage, liability or

> expenses of any nature, incurred by the Company in connection with any act of the Agent contrary to the authority, limitations, terms or restrictions contained herein and contained in the rules, underwriting instructions and guidelines of the Company.

(Id.)

Finally, while it is true that a plaintiff may often claim more and varied damages in a tort based case than a breach of contract action, this can never be a valid reason to morph a case that is grounded under a contractual agreement between the parties into a case that arises under the more general and broad, societal duty. The fiduciary duties were not collateral to the Agency Agreement here and therefore, as indicated, the plaintiffs' claims are barred by the gist of the action doctrine.

In light of the foregoing, the defendants' motion to dismiss the plaintiffs' complaint will be granted on the basis that the plaintiffs' claims are barred by the gist of the action doctrine[2]. An appropriate order shall issue.

*s/Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

Date: July 22, 2013
O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-2404-01.wpd

---

[2]In light of the court's ruling on the defendants' argument that the plaintiffs' claims are barred by the gist of the action doctrine, it is not necessary to address the merits of the defendants' remaining arguments.

10